UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| A.J., a minor, by and through her Next Friend, LORI DIXON, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | No. 4:13-CV-1514 CAS ) ) |
| DONNELL W. TANKSLEY, et al., | ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendants Bettye Battle-Turner, Richard Gray, Thomas Irwin, Erwin O. Switzer, Mayor Francis G. Slay, and the Board of Police Commissioners of the City of St. Louis's motion to dismiss plaintiffs' Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Also before the Court is defendants Perri A. Johnson, Donnell W. Tanksley, and Matthew J. Waggoner's motion to dismiss pursuant to Rule 12(b)(6). Plaintiffs oppose both motions and filed response memoranda. Defendants filed reply memoranda in support of their motions. The motions are fully briefed and ripe for review. For the following reasons, defendants Bettye Battle-Turner, Richard Gray, Thomas Irwin, Erwin O. Switzer, Mayor Francis G. Slay, and the Board of Police Commissioners of the City of St. Louis's motion to dismiss will be granted, and defendants Perri A. Johnson, Donnell W. Tanksley, and Matthew J. Waggoner's motion to dismiss will be granted, in part, and denied, in part.

*I. Background*

The matter in dispute stems from a fatal motor vehicle accident that occurred in St. Louis, Missouri on June 1, 2008. Plaintiffs allege that the decedent, Robert Jason Johnson, who was riding a motorcycle, was killed as a result of the negligence of Bryant Howard, who was driving the car

that struck Mr. Johnson.  St. Louis Metropolitan Police officers Donnell Tanksley and Matthew Waggoner responded to the scene of the accident.  Plaintiffs allege that these officers prepared a false police accident report, which was approved by their supervisor Perri Johnson, assigning fault to Mr. Johnson. Plaintiffs further allege that defendants Tanksley, Waggoner, and Johnson failed to properly investigate the accident, and that defendants Tanksley and Waggoner provided false testimony in connection with a 2009 wrongful death suit against Mr. Howard, in which the jury returned a verdict in favor of Mr. Howard.

The plaintiffs in this suit are the Mr. Johnson's minor children, A.J., D.M., and B.M.[1], and the Estate of Robert Jason Johnson (the "Estate").  In their Complaint, plaintiffs bring claims pursuant to 42 U.S.C. § 1983 for violations of their civil rights.  Plaintiffs bring their claims against the Board of Police Commissioners of the City of St. Louis ("Board of Police"); Richard Gray, in his official capacity as President of the Board of Police; Thomas Irwin, in his official capacity as Vice-President of the Board of Police; Erwin O. Switzer, in his official capacity as Purchasing Member of the Board of Police; Mayor Francis G. Slay,  in his official capacity as Ex-Officio Member of the Board of Police; Bettye Battle-Turner, in her official capacity as Treasurer of the Board of Police (collectively the "Police Board Defendants"); Donnell W. Tanksley, in his individual capacity; Matthew J. Waggoner, in his individual capacity; and Perry A. Johnson, in his individual capacity (collectively the "Individual Defendants").

In their Complaint, plaintiffs bring the following five (5) counts: violation of civil rights – substantive due process, against defendants Tanksley, Waggoner, and Johnson (Count I); violation

---

[1]On October 2, 2013, the Court appointed Lori Dixon as next friend for A.J., and Shannon Mers as next friend for D.M. and B.M.

of civil rights – equal protection, against defendants Tanksley, Waggoner, and Johnson (Count II); violation of civil rights – conspiracy, against defendants Tanksley, Waggoner, and Johnson (Count III); violation of civil rights – delegation of authority, failure to train supervise or control and/or pattern of transgression against the Police Board Defendants (Count IV); and violation of civil rights – *respondeat superior*, against the Police Board Defendants (Count V). For relief, plaintiffs are asking for money damages, punitive damages, attorneys' fees, and costs. They are not asking for injunctive relief.

The Police Board Defendants responded to the Complaint by filing a motion to dismiss, which is presently before the Court. In their motion to dismiss, these defendants make the following arguments for dismissal: (1) plaintiffs have failed to allege any facts sufficient to establish claims pursuant to 42 U.S.C. § 1983 in Counts IV and V; and (2) the applicable statute of limitations for Counts IV and V has elapsed, and plaintiffs' claims are time-barred. Defendants Tanksley, Waggoner, and Johnson also filed a motion to dismiss in response to the Complaint. These defendants make the following arguments for dismissal: (1) the statute of limitations bars plaintiffs' claims based on allegations that the officers prepared a false police accident report and failed to properly investigate the accident; (2) perjured testimony by a police officer does not amount to a violation of plaintiffs' substantive due process rights; (3) plaintiffs have not alleged sufficient personal involvement by defendant Johnson to sustain their claims against him.

## II. Allegations

Plaintiffs allege in their Complaint that on June 1, 2008, Robert Jason Johnson ("the Decedent") was driving his motorcycle in an eastbound direction along Natural Bridge Avenue near the intersection of Paris Avenue in St. Louis, Missouri. At the same time, Bryant Howard was driving his car in an eastbound direction along Natural Bridge Avenue, near the intersection of Paris Avenue, when he turned right and crashed into the Decedent. As a result of the impact, Decedent's body flipped into the air and struck a utility pole, causing the Decedent's death. Plaintiffs allege that at the time, Mr. Howard was negligent in that he (1) negligently and carelessly failed to operate his vehicle; (2) negligently and carelessly failed to yield to Decedent; (3) negligently and carelessly failed to maintain safe speed of his vehicle; (4) negligently and carelessly failed to control his vehicle; (5) negligently and carelessly failed to drive within an appropriate driving lane; and (6) negligently and carelessly failed to keep a safe lookout. They allege that the Decedent was killed as a result of Mr. Howard's negligence. According to the Complaint, the Decedent was white and Mr. Howard is African American.

Officers Waggoner and Tanksley of the St. Louis City Police Department arrived at the scene of the collision. Defendant Waggoner prepared a police accident report, which is attached to the Complaint. Plaintiffs allege that the police accident report falsely lists Defendant Tanksley as a witness, even though he did not witness the collision. According to the Complaint, "[t]he police accident report contains false information provided by Defendant Tanksley of alleged acts of the Decedent well before the collision that caused his death and in the opposite direction in which Decedent and Howard were traveling at the time of the collision." See Doc. 1 at 6. Plaintiffs further allege:

> Defendant Waggoner admitted under oath that Defendant Tanksley instructed him to include in the police accident report the negative statements of Defendant Tanksley against the Decedent. Defendant Tanksley stated under oath that other than giving his statement he had no involvement in the preparation of the police accident report; a direct contradiction to Defendant Waggoner's testimony. Defendant Waggoner admitted under oath that Defendant Tanksley instructed him to include in the police accident report the negative statements of Defendant Tanksley against the Decedent because Defendant Tanksley "felt it was necessary to be put in there." The police accident report falsely stated that the Decedent was responsible for the collision.

Id. at 6. Plaintiffs plead that defendant Johnson was the acting supervisor for Tanksley and Waggoner, and that he approved the false police accident report. Plaintiffs aver that defendant Tanksley and Johnson are African Americans.

Plaintiffs also contend that defendants Tanksley, Waggoner and Johnson violated St. Louis Police Department policy because they failed to have an accident reconstruction team perform measurements and investigate the collision, which they did "to cover up the real facts of the collision occurrence and to place blame on the Decedent . . . ." Id. Plaintiffs allege that "[d]efendants Tanksley and Johnson, both African-American males, blamed the accident on the Decedent, a Caucasian male, to protect the driver of the car that struck the Decedent, Howard, also an African-American male." Id.

According to the Complaint, as a direct result of the false police accident report, plaintiffs were denied $25,000.00 in life insurance benefits. The claim for accidental death benefits was denied by UNUM Life Insurance Company of America by letter dated December 3, 2009, a copy of which is attached to the Complaint. Plaintiffs A.J., D.M., and B.M. challenged the denial of insurance benefits by filing suit in this district court on October 27, 2011. The case was dismissed based on the finding that the plaintiffs lacked standing to sue, a decision that was affirmed on appeal. See A.J. v. UNUM, 696 F.3d 788 (8th Cir. 2012).

-5-

Plaintiffs A.J., D.M. and B.M. also filed a petition for damages against Howard in the Circuit Court for the City of St. Louis, Missouri, captioned: <u>Amber Johnson, et al. v. Bryant Howard</u>; Cause No. 0922-CC09377 (the "Wrongful Death Case"). Defendants Waggoner and Tanksley were deposed in the Wrongful Death Case, which was tried to a jury on February 6, 7, and 8, 2012. Plaintiffs allege defendants Waggoner and Tanksley gave false deposition and trial testimony in connection with the Wrongful Death Case. The allegedly false police accident report was also used against plaintiffs in this Wrongful Death Case. The jury returned a verdict in favor of Howard, and judgment was entered against plaintiffs, which was affirmed on appeal.

Plaintiffs allege that defendants Tanksley, Waggoner and Johnson's actions in preparing the false police accident report, giving false testimony, and failing to properly investigate the collision by having accident reconstruction performed denied plaintiffs their property and their meaningful access to the courts, and the Individual Defendants did so with deliberate indifference to plaintiffs' rights. They also maintain that defendants Tanksley, Waggoner, and Johnson's actions violate the Equal Protection Clause of the Fourteenth Amendment because these defendants did not conduct a fair investigation of the collision and blamed the collision on the Decedent because of his race, and they protected Howard because of his race. Plaintiffs also allege that defendants Tanksley, Waggoner and Johnson conspired to violate their civil rights. In addition, plaintiffs aver that the Police Board Defendants are liable for violating their civil rights based on the following four theories: (1) the Police Board delegated authority to defendants Tanksley, Waggoner and Johnson; (2) the Police Board failed to train, supervise or control defendants Tanksley, Waggoner and Johnson; (3) there was a pattern of transgressions within the department; and (4) *respondeat superior.*

For damages, plaintiffs allege that as a result of the events described in their Complaint, they are entitled to compensatory and punitive damages, plus attorneys' fees. Plaintiffs are not asking for injunctive relief.

### *III. Standard*

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In the complaint, a plaintiff "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir.), cert. denied, 555 U.S. 882 (2008) (citing Twombly, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." Id. at 562 (quoted case omitted). This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." Id. at 556.

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," Twombly, 550 U.S. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. Id; Fed. R. Civ. P. 8(a)(2). Materials attached to the complaint as exhibits may

be considered in construing the sufficiency of the complaint. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).

## IV. Discussion

### A. Statute of Limitations

The Police Board Defendants and the Individual Defendants moved for dismissal on the basis that plaintiffs' claims were barred by the applicable statute of limitations. The Police Board Defendants have since withdrawn their motion to dismiss on the basis of the statute of limitations. The Individual Defendants state in their reply memorandum that they are withdrawing their motion as to the minor children only, but that the claims of the Estate are time-barred. The Individual Defendants contend that the claims of the Estate accrued when the misconduct occurred, and therefore, any claim related to the preparation of the allegedly false police accident report and failure to investigate the scene of the accident are barred by the statute of limitations.[2] The Estate responds that the statute of limitations did not accrue at the moment of the alleged wrong, but rather when the alleged wrong resulted in damages. Plaintiffs also argue that they did not know and could not have known about the false police accident report until defendants Tanksley and Waggoner provided false testimony years later.

According to the Eighth Circuit, "bar by a statute of limitation is typically an affirmative defense, which the defendant must plead and prove." Walker v. Barrett, 650 F.3d 1198, 1203 (8th Cir. 2011) (quoting Jessie v. Potter, 516 F.3d 709, 713 n. 2 (8th Cir. 2008)). As "a general rule, 'the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6)

---

[2]The Individual Defendants argued that claims based on their supposedly false testimony were not time-barred, but that plaintiffs failed to state a claim based on any alleged false testimony. The Court addresses this argument infra.

-8-

dismissal unless the complaint itself establishes the defense.'" Id. (quoting Joyce v. Armstrong Teasdale, LLP, 635 F.3d 364, 367 (8th Cir. 2011)).

Section 1983 does not contain its own statute of limitation, instead § 1983 claims that accrue within a particular state are governed by that state's statute of limitations. Wilson v. Garcia, 471 U.S. 261, 279–80 (1985) (superseded on other grounds by 28 U.S.C. § 1658(a), as recognized in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 379–80 (2004)). In this case, the parties agree that Missouri's five-year statute of limitations for personal injury actions applies. See Mo. Rev. Stat. § 516.120.4 (governing "an action for . . . any other injury to the person or rights of another"). The parties disagree as to when the Estate's claims accrued.

When a § 1983 claim accrues is not governed by state law, but rather by federal law. Wallace v. Kato, 549 U.S. 384, 388 (2007) ("the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law.") Under federal law, a cause of action accrues "when the plaintiff has 'a complete and present cause of action,' . . . that is, when 'the plaintiff can file suit and obtain relief.'" Id. (quoting Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997)). In Wallace, the Supreme Court wrote: "Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable." Id. (citing 1 C. Corman, Limitation of Actions § 7.4.1, pp. 526–527 (1991) (footnote omitted); 54 C.J.S., Limitations of Actions § 112, p. 150 (2005)). Unlike many states, federal law does not follow the "discovery rule" – the doctrine that a claim begins to accrue when a claim is discovered or likely to be discovered by reasonable diligence. The Supreme Court has explicitly declined to

extend the discovery rule to federal claims outside of fraud.[3] TRW Inc. v. Andrews, 534 U.S. 19, 27 (2001). See also Gabello v. S.E.C. 133 S. Ct. 1216, 1221 (2013) (recognizing that discovery rule doctrine "arose in 18th-century fraud cases as an 'exception' to the standard rule, based on the recognition that 'something different was needed in the case of fraud, where a defendant's deceptive conduct may prevent a plaintiff from even knowing that he or she has been defrauded.'") (quoting Merk & Co v. Reynolds, 559 U.S. 633, 644, 1793 (2010)).

Plaintiffs filed the present suit on August 3, 2013. The Individual Defendants maintain that the Estate's claims in this case accrued in June 2008, more than five years earlier, when the police accident report at issue was prepared, and when the accident should have been investigated. The Court does not find the Individual Defendants' argument compelling because these defendants have not explained how the Estate had a complete claim in June 2008. Setting aside when plaintiffs knew or should have known of the allegedly false report, the Estate in this case did not have a "complete and present cause of action" in June 2008, because at that time, according to the allegations in the Complaint, there were no damages. Wallace, 549 U.S. at 388. As alleged in the Complaint, the Estate did not sustain damages until December 2009, when the insurance company denied accidental death benefits based on the supposedly false report. It was at this time that the alleged wrongful acts "result[ed] in damages" and the Estate could have filed suit. Id. The Individual Defendants have not shown to the Court's satisfaction that the Estate had a complete

---

[3]Arguably, plaintiffs' claims based on the allegedly false police accident report are claims of fraud or concealment, and the Individual Defendants' "deceptive conduct" prevented plaintiffs from knowing they had a claim. Merk & Co, 559 U.S. at 644. However, because the Court finds plaintiffs' claims are not barred by the general accrual rule under federal law, the Court need not address whether the discovery rule, which is applied in federal cases involving fraud, should apply here. Id.

cause of action in June 2008. There were no damages until the allegedly false report was used to the Estate's detriment. It is the Individual Defendants' burden to establish that the statute of limitations has run, and from the face of the Complaint, the Court cannot conclude that the Estate's claims are time-barred. The Individual Defendants' motion will be denied in this respect.

        B.        **Claims Against Board of Police Commissioners**

The Police Board Defendants assert in their motion to dismiss that the Complaint is devoid of any allegations attaching liability to the Police Board. They argue plaintiffs fail to sufficient plead any allegations regarding a delegation of authority; failure to control, train or supervise; or a pattern of transgressions that directly led to the alleged deprivation of plaintiffs' civil rights. They also argue that *respondeat superior* cannot be used as a theory of liability under 42 U.S.C. § 1983.[4] According to the Police Board Defendants, plaintiffs have failed to allege any facts establishing a cause of action under § 1983 against them and, therefore, the claims against them in the Complaint should be dismissed.

Section 1983 liability for a constitutional violation may attach to a government entity if the violation resulted from (1) an "official municipal policy," Monell v. Department of Soc. Servs. of New York City, 436 U.S. 658, 691 (1978); (2) an unofficial "custom," id. at 690–91; or (3) a deliberately indifferent failure to train or supervise, see City of Canton, Ohio v. Harris, 489 U.S.

---

[4] It is well established that § 1983 will not support a claim based on a *respondeat superior* theory of liability. Monell v. Department of Soc. Servs. of New York City, 436 U.S. 658, 691 (1978); Polk County v. Dodson, 454 U.S. 312, 325 (1981); Andrews v. Fowler, 98 F.3d 1069, 1074 (8th Cir 1996); Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir.1990). The Police Board Defendants moved for dismissal of Count V on this ground, and plaintiffs conceded in their response that controlling law does not support a § 1983 claim based on a *respondeat superior* theory of liability. Therefore, the Court will dismiss Count V.

378, 388, 109 (1989). In their Complaint, plaintiffs attempt to attach liability under each of these theories. The Police Board Defendants argue plaintiffs have failed to plead sufficient facts to state claims under these three theories of liability. The Court will consider in turn each justification the plaintiffs advance for holding the Police Board Defendants liable under § 1983.

### 1. Delegation of authority

Plaintiffs argue that liability in this case attaches to the Police Board because the Police Board delegated decision-making authority to the Individual Defendants. In other words, because there was a delegation of authority to the Individual Defendants, these Individual Defendants were transformed into policymakers, and their decisions regarding the investigation of the accident and preparation of the police accident report give rise to liability on the part of the Police Board.

Liability can attach to a governmental entity where "the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986). "[T]he authority to make municipal policy is necessarily the authority to make final policy." City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988). In this case, however, plaintiffs' Complaint is devoid of any factual allegations supporting the notion that defendants Tanksley, Waggoner, and Johnson had final decision making authority. With regard to the delegation of authority, plaintiffs allege in their Complaint that "the policy maker Defendant Board is an aldermanic board, the mayor, or someone else, and that person delegated full authority and/or empowered Defendant Tanksley, Defendant Waggoner and Defendant Johnson to make policy" and "[t]he delegation of authority by the actual policy maker of Defendant Board placed Defendant Tanksley, Defendant Waggoner and Defendant Johnson in a policy making position, and

the acts of Defendant Tanksley, Defendant Waggoner and Defendant Johnson may fairly be said to be those of the Defendant Board." See Doc. 1 at 15-16. This is not enough.

Plaintiff are correct, as they state in their response memorandum, that in the past the Supreme Court has rejected any heightened pleading requirement for claims against a governmental entity. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993). But more recently the Supreme Court has held that in order to survive a motion to dismiss, a complaint must allege facts sufficient "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Considering this pleading standard, in order to state a viable § 1983 claim against the Board of Police, plaintiffs are required to plead facts sufficient to show at least an inference that their constitutional rights were violated as a result of action taken as a result of a delegation of authority. Id.; Iqbal, 556 U.S. at 678.

Assuming plaintiffs have pleaded a constitutional violation by defendants Tanksley, Waggoner, and Johnson, they have pleaded no facts in the Complaint that would demonstrate the existence of a delegation of authority. Hess v. Ables, 714 F.3d 1048, 1054 (8th Cir. 2013). Plaintiffs' allegations concerning a delegation of authority are mere labels and conclusions, which are inadequate to state a claim. Twombly, 550 U.S. at 555.

### 2. Failure to Train, Supervise, Control or Discipline

As an alternative theory, plaintiffs also allege in their Complaint that the Police Board Defendants are liable in this case because they failed to properly hire, train, supervise, control or disciple defendants Tanksley, Waggoner, and Johnson. The Police Board Defendants move to dismiss liability based on this theory because, they argue, plaintiffs have not alleged sufficient facts to support such a theory of liability.

The Supreme Court has stated that "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 131 S Ct. 1350, 1359 (2011) (citing Oklahoma City v. Tuttle, 471 U.S. 808, 822–823 (1985) (plurality opinion)). According to the Supreme Court, in order to state a claim under § 1983, a governmental entity's "failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' Only then 'can such a shortcoming be properly thought of as a[n entity's] policy or custom that is actionable under § 1983.'" Id. at 1359-60 (quoting City of Canton, 489 U.S. at 388). Therefore, "when [a governmental entity's] policymakers are on actual or constructive notice that a particular omission in their training program causes [the entity's] employees to violate citizens' constitutional rights, the [governmental entity] may be deemed deliberately indifferent if the policymakers choose to retain that program." Id. at 1360. The governmental entity's "policy of inaction" in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the [entity] itself to violate the Constitution." Canton, 489 U.S. at 395.

In their Complaint, plaintiffs allege that the Police Board Defendants were "deliberately indifferent to the rights of others in adopting its hiring and training practices, and in failing to supervise, control and/or discipline Defendants Tanksley, Defendant Waggoner and Defendant Johnson, such that those failures reflected a deliberate or conscious choice by Defendant Board" and "the need to correct deficiencies is so obvious, and the inadequacy so likely to result in the violation

of constitutional rights, that the policymakers of Defendant Board can reasonably be said to have been deliberately indifferent to the need." See Doc. 1 at 16.

Again, plaintiffs have not alleged in their Complaint facts sufficient "to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678. As with their theory of delegation of authority, plaintiffs only recite the conclusory elements of a claim based on failure to train, supervise, control or discipline the Individual Defendants. The Complaint is devoid of any facts relating to this theory of liability which, if proven, would support the claim against the Police Board Defendants.

### 3. Pattern of Transgressions

Alternatively, plaintiffs allege the Police Board Defendants are liable because there was a pattern of transgressions within the department. Again, the Police Board Defendants move for dismissal based on the ground that plaintiffs have not alleged sufficient facts to support a claim on this basis.

. "Governmental liability may be established through proof that the alleged misconduct was so pervasive among the non-policy making employees of the [entity] as to constitute a 'custom or usage' with the force of law." McGautha v. Jackson Cnty., Mo., Collections Dep't, 36 F.3d 53, 56 (8th Cir. 1994) (internal quotation marks and citation omitted). "Generally, an isolated incident of alleged police misconduct, such as [plaintiff] alleges occurred here, cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983." Ulrich v. Pope County, 715 F.3d 1054, 1061 (8th Cir. 2013) (citing Wedemeier v. City of Ballwin, 931 F.2d 24, 26 (8th Cir. 1991)). "[A] custom can be shown only by adducing evidence of a continuing, widespread, persistent pattern of unconstitutional misconduct." Jenkins v. County of Hennepin, Minn., 557 F.3d 628, 634 (8th Cir. 2009) (internal quotation marks and citation omitted).

In their Complaint, plaintiffs allege:

> 118. [T]he acts of Defendant Tanksley, Defendant Waggoner and Defendant Johnson were part of a pattern of transgressions, of which Defendant Board knew or should have known. The failure of Defendant Board to act proactively to prevent such a pattern of transgressions, and particularly to prevent the constitutional violations outlined herein, establishes the policy of Defendant Board to condone or otherwise tolerate such constitutional violations.
>
> 119. Defendant Board thus had a "policy or custom" of failing to act upon prior similar complaints of unconstitutional conduct, of which they knew or should have known, which caused the constitutional injuries at issue. There was a prior pattern of unconstitutional conduct so "persistent and widespread" as to have the effect and force of law. See Doc.1 at 17.

Plaintiffs have not plead any facts to support this theory of liability. They have not stated what other transgressions have occurred, or how the department addressed or failed to address any such transgressions. In the absence of any factual allegations to support the existence of an unconstitutional policy or custom, there is no basis upon which to hold the Police Board defendants liable under § 1983. Plaintiffs only make conclusory allegations against the Police Board Defendants. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. In Count IV plaintiffs merely recite the elements of a § 1983 claim against the Police Board Defendants with no factual basis for holding these defendants liable. Accordingly, the Court finds plaintiffs have failed to state claims under § 1983 against the Police Board Defendants.

C.  **Claims Against Defendant Johnson**

Defendant Johnson also moves to dismiss based on the ground that the Complaint fails to allege sufficient conduct on his part that would raise to the level of a § 1983 violation. There is no vicarious liability under 42 U.S.C. § 1983. Monell, 436 U.S. at 691. A supervisor may not be held liable under § 1983 merely because his subordinate committed a constitutional tort. See Clay v. Conlee, 815 F.2d 1164, 1169 (8th Cir. 1987). In order to be held liable under § 1983, a supervisor must either "directly participate[ ] in the constitutional violation or [ ] fail[ ] to train or supervise the subordinate who caused the violation." Brockinton v. City of Sherwood, Ark., 503 F.3d 667, 673 (8th Cir. 2007). The Eighth Circuit has provided the following framework for determining supervisory liability under § 1983: a supervisor is liable if he or she "(1) had 'notice of a pattern of unconstitutional acts committed by subordinates'; (2) [was] deliberately indifferent to or tacitly authorized those acts; and (3) failed to take 'sufficient remedial action'; (4) proximately causing injury to [plaintiff]." Livers v. Schenck, 700 F.3d 340, 356 (8th Cir. 2012) (quoting Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir. 1996). See also Jane Doe A. v. Special Sch. Dist. of St. Louis Cnty., 901 F.2d 642, 645 (8th Cir. 1990). "In order to show deliberate indifference or tacit authorization, [plaintiffs] must allege and ultimately prove [defendants] 'had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation.'" Id.

Reviewing the Complaint in a light most favorable to plaintiffs, the Court finds plaintiffs have stated a claim against defendant Johnson in Counts I, II, and III. Plaintiffs allege defendant Johnson was directly involved in the constitutional violations. They allege he was involved in preparing and approving the allegedly fraudulent police accident report, and that he was part of the decision not to properly investigate the accident scene. They allege defendant Johnson tried to "to

cover up the real facts of the collision" and to "place blame on the Decedent" based on his race. See Doc. 1 at 7. The Court finds plaintiffs have alleged sufficient facts in order to state a claim against defendant Johnson. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555. Defendant Johnson's motion to dismiss is denied in this regard.

### D. Claims Based On Allegedly False Testimony

In their motion to dismiss, the Individual Defendants move to dismiss any claims based on the allegations that defendants Waggoner and Tanksley provided false testimony in connection with the Wrongful Death Case. Citing to Briscoe v. LaHue, 460 U.S. 325 (1983), defendants argue that false testimony by a police officer does not amount to a constitutional violation because it is not an act performed under the color of law.

Plaintiffs responded to the Individual Defendants' motion by arguing that these defendants have misconstrued their Complaint, and that, in fact, they are not alleging a claim based for denial of access to the courts based on perjured testimony. Plaintiffs argue that the constitutional violations they are claiming stem from the preparation of the false police accident report and the failure to properly investigate the accident, and they "included the facts of Defendant Tanksley and Defendant Waggoner's testimony to present the totality of the circumstances. The testimony of Defendant Tanksley and Defendant Waggoner simply explained or ratified the contents of the false police report in the Wrongful Death Case." See Doc. 39 at 7.

After reviewing the Complaint, the Court agrees with the Individual Defendants that plaintiffs have alleged in Count I of their Complaint that the Individual Defendants violated their constitutional rights by providing false testimony: "Defendants Tanksley, Waggoner and Johnson displayed deliberate indifferent to the rights of Plaintiffs' property and meaningful access to the

courts by preparing the false police accident report, <u>giving false testimony</u> and failing to properly investigate the collision by having accident reconstruction performed." See Doc. 1 at 9 (emphasis added). Plaintiffs also allege in Court III: "Defendants Tanksley, Waggoner and Johnson acted in concert in preparing the false police accident report, <u>giving false testimony</u> and failing to properly investigate the collision by having accident reconstruction performed to deprive Plaintiffs property and meaningful access to the courts as described herein." Id. at 13 (emphasis added).

Based on the face of the Complaint, it would seem plaintiffs are attempting to bring a § 1983 claim against the Individual Defendants based on allegations that they gave false testimony at trial and in deposition. Witnesses are entitled to absolute immunity, and plaintiffs cannot state a claim under § 1983 based on allegations that a defendant gave false testimony. See <u>Snelling v. Westhoff</u>, 972 F.2d 199, 200 (8th Cir. 1992) (holding district court properly dismissed claim against governmental agent based on absolute witness immunity) (citing <u>Briscos v. LaHue</u>, 460 U.S. at 329-46; <u>House v. Belford</u>, 956 F.2d 711, 720-21 (7th Cir.1992)). See also <u>Conley v. Office of the Pub. Defender</u>, 653 F.2d 1241, 1242 (8th Cir. 1981) (witnesses are absolutely immune from § 1983 suit arising from their testimony in judicial proceedings). To the extent plaintiffs are alleging their constitutional rights were violated by the false testimony of any of the defendants, these Individual Defendants' motion to dismiss is granted on the basis of witness immunity.

## *V. Conclusion*

In sum, all the defendants concede that the claims of the minor children are not time-barred, and the Court finds plaintiffs' claims against the Estate are not barred by the applicable statute of limitations. As for plaintiffs' claims against the Police Board Defendants, plaintiffs have failed to state a claim under § 1983, because plaintiffs do not plead any facts that would establish liability for

a governmental entity. In their Complaint, plaintiffs only offer a recitation of the elements of their theories of liability, which is not enough to avoid dismissal. As for defendant Johnson, the Court finds plaintiffs do allege sufficient conduct on his part that would raise to the level of a § 1983 violation. The motion to dismiss claims against Defendant Johnson is denied. The Court will grant the Individual Defendants' motion, however, to the extent plaintiffs are attempting to state § 1983 claims against these defendants based on allegations that they gave false testimony.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Bettye Battle-Turner, Richard Gray, Thomas Irwin, Erwin O. Switzer, Mayor Francis G. Slay, and the Board of Police Commissioners of the City of St. Louis's motion to dismiss is **GRANTED.** [Doc. 23]

**IT IS FURTHER ORDERED** that consist with the terms of this Memorandum and Order, defendants Perri A. Johnson, Donnell W. Tanksley, and Matthew J. Waggoner's motion to dismiss is **GRANTED** in part and **DENIED** in part. The motion is **GRANTED** to the extent plaintiffs are attempting to state a claim under 42 U.S.C. § 1983 based on allegations that these defendants gave false testimony. In all other respects, the motion is **DENIED.** [Doc. 33]

An appropriate Order of Partial Dismissal will accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this 24th day of April, 2014.