# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

A.J., a minor, by and through her Next )
Friend, LORI DIXON, et al., )
  )
      Plaintiffs, )
  )
   and )
  ) No. 4:13-CV-1514 CAS
DEBORAH LEE JOHNSON, )
  )
      Intervenor Plaintiff, )
  )
   v. )
  )
DONNELL W. TANKSLEY, et al., )
  )
      Defendants. )

## MEMORANDUM AND ORDER

This matter is before the Court on defendants Perri A. Johnson, Donnell W. Tanksley, and

Matthew J. Waggoner's motion for summary judgment. Plaintiffs A.J., D.M., B.M., and The Estate

of Robert Jason Johnson filed a response in opposition, to which defendants filed a reply. Intervenor

plaintiff Deborah Lee Johnson did not file her own response in opposition but incorporated by

reference plaintiffs' response memorandum and "Statement of Material Facts in Opposition."[1] For

the following reasons, the Court will grant the motion for summary judgment.

---

[1] The original plaintiffs in this suit are the Estate of Robert Jason Johnson (the "Estate") and
Mr. Johnson's minor children, A.J., D.M., and B.M. Last spring, Deborah Lee Johnson, Mr.
Johnson's mother, moved to intervene as a party plaintiff. The motion was unopposed, and on June
10, 2014, the Court granted the motion. Deborah Lee Johnson filed an Intervenor Complaint against
defendants Tanksley, Waggoner, and Johnson that was substantially similar to and tracked the same
language as plaintiffs' claims against these same defendants. For purposes of summary judgment,
the Court will refer to plaintiffs and the intervenor plaintiff collectively as "Plaintiffs."

## I. Background

The matter in dispute stems from a fatal motor vehicle accident that occurred in St. Louis, Missouri on June 1, 2008. Plaintiffs allege that the decedent, Robert Jason Johnson, who was riding a motorcycle, was killed as a result of the negligence of Bryant Howard, who was driving the car that collided with Mr. Johnson. St. Louis Metropolitan Police officers Donnell Tanksley and Matthew Waggoner responded to the scene of the accident. Plaintiffs allege that these officers prepared a false police accident report, which was approved by their supervisor Perri Johnson, assigning fault to Mr. Johnson. Plaintiffs further allege that defendants Tanksley, Waggoner, and Johnson failed to properly investigate the accident, and that defendants Tanksley and Waggoner provided false testimony in connection with a 2009 wrongful death suit against Mr. Howard, in which the jury returned a verdict in favor of Mr. Howard.

Three claims, brought pursuant to 42 U.S.C. § 1983 for violations of their civil rights, remain in this case against defendants Tanksley, Waggoner, and Johnson: violation of civil rights – substantive due process (Count I); violation of civil rights – equal protection (Count II); and violation of civil rights – conspiracy (Count III).[2] In the motion presently before the Court, defendants Tanksley, Waggoner, and Johnson argue they are entitled to summary judgment as a matter of law as to all the remaining claims against them.

_____

[2]In the original complaint, plaintiffs brought additional claims – Counts IV and V – against the Board of Police Commissioners of the City of St. Louis ("Board of Police"); Richard Gray, in his official capacity as President of the Board of Police; Thomas Irwin, in his official capacity as Vice-President of the Board of Police; Erwin O. Switzer, in his official capacity as Purchasing Member of the Board of Police; Mayor Francis G. Slay, in his official capacity as Ex-Officio Member of the Board of Police; Bettye Battle-Turner, in her official capacity as Treasurer of the Board of Police (collectively the "Police Board Defendants"). On April 24, 2014, the Court granted the Police Board Defendants' motion to dismiss. The Court found plaintiffs had failed to state a claim in Counts IV and V, and the Police Board Defendants were dismissed from this suit.

## II.  Summary Judgment Standard

The Eighth Circuit has recently articulated the appropriate standard for consideration of motions for summary judgment, as follows:

> Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (internal citations and quotation marks omitted). "Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078–79 (8th Cir. 2008) (cited case omitted).

With this standard in mind, the Court accepts the following facts as true for purposes of resolving the parties' motions for summary judgment.

## III.  Facts

On June 1, 2008, St. Louis Metropolitan Police Department Lieutenant Donnell Tanksley was patrolling in an unmarked car in the City of St. Louis.  While driving west on Natural Bridge

approaching Marcus, defendant Tanksley observed a yellow motorcycle traveling among a group of motorcycles. Tanksley testified that he observed the yellow motorcycle weaving in and out of the bicycle lane. Plaintiffs deny that the yellow motorcycle was weaving in and out of the bicycle lane and points to the testimony of Yolanda Diggs, a witness, who testified that the yellow motorcycle was not weaving, but was doing tricks, such as popping wheelies. Defendant Tanksley turned on his siren and followed the yellow motorcycle into a Shell station parking lot on the corner of Natural Bridge and Marcus. The driver of the yellow motorcycle turned his head, looked at defendant Tanksley, and sped off of the gas station lot. Defendant Tanksley notified the police dispatcher that he had tried to stop a yellow motorcycle, which then sped off at a high rate of speed heading eastbound on Natural Bridge with careless and reckless driving.[3] Defendant Tanksley did not pursue the yellow motorcycle.

Sometime after, either a few seconds or moments later, defendant Tanksley continued patrolling on eastbound Natural Bridge. Soon after, he observed that an accident had occurred between a yellow motorcycle and a white car near Natural Bridge and Paris. Defendant Tanksley

---

[3]Plaintiffs deny this statement of fact, pointing to the fact that plaintiffs requested production of "audio copies of all radio calls which occurred in connection with Defendant Donnell W. Tanksley and Robert Jason Johnson on June 1, 2008," from defendant Board of Police Commissioners of the City of St. Louis, a defendant that has been dismissed from this suit. The Board of Police objected to the request as overly board and unduly burdensome. Subject to that objection, it referred plaintiffs to documents produced. However, no copies of this call to the dispatcher were produced. The fact that there is no record of defendant Tanksley's call to the dispatcher, does not mean that it did not occur or that this fact is disputed. Plaintiffs did not move to compel production of radio records, and it is possible that a record of this call (and other calls) simply do not exist. Without further foundation, the absence of the recording is not admissible evidence. Defendant Tanksley may testify that he made the call to the dispatcher and what he said. This fact remains undisputed because Plaintiffs have offered no admissible evidence showing that disputes this fact. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000).

did not see the collision occur, but he was the first officer to arrive at the scene. Defendant Tanksley testified that he believed the yellow motorcycle that was involved in the accident was the same motorcycle that he attempted to stop on the Shell station lot.

Defendant Tanksley checked to see if anyone was injured, and he called the dispatcher to report the accident. Defendant Tanksley requested the Accident Reconstruction Unit via the dispatcher. Other officers arrived at the scene after Defendant Tanksley. Defendant Waggoner was dispatched to the scene of the collision. When defendant Waggoner arrived at the scene, he observed that there had been a collision involving a motorcycle and that there were already other officers on the scene, including defendant Tanksley.

Bryant Howard was the driver of the car that collided with that motorcycle. Yolanda Diggs was a passenger in that car. Mr. Howard and Ms. Diggs both spoke to police officers at the scene of the accident. Neither Mr. Howard nor Ms. Diggs knew any of the police officers who responded to the accident scene. Mr. Howard testified that he saw a yellow motorcycle popping wheelies and going side to side as he was driving eastbound on Natural Bridge. He also testified that he believed this was the same motorcycle that crashed into his car, and that the motorcycle was driving fast and was in the bicycle lane before the collision. Ms. Diggs testified that she saw a yellow motorcycle doing tricks, weaving, speeding, and popping wheelies and that she saw an unmarked police car pull the motorcycle over. She testified that she believes this was the same motorcycle that crashed into Mr. Howard's car. Ms. Diggs further testified that she saw the yellow motorcycle driving in the

bicycle lane a couple seconds before the collision.[4]  Both Ms. Diggs and Mr. Howard testified that they were truthful when they spoke to the police officers at the scene of the accident.

Robert Jason Johnson, the driver of the yellow motorcycle, was taken from the scene of the collision to Barnes-Jewish Hospital, and Police Officer Brian Waltman of the Accident Reconstruction Unit was sent to the hospital on June 1, 2008, to determine his condition.[5]  Robert Jason Johnson was alive when Officer Waltman arrived at the hospital.  Officer Waltman was told by a doctor in the hospital that Robert Jason Johnson was in critical-unstable condition, and he relayed this information to the traffic sergeant.[6]  According to Officer Waltman, he informed

_____

[4]Plaintiffs' counsel asserts in his objections to defendant Statement of Uncontroverted Material Facts that this statement is physically impossible, and he ask the Court to take "judicial notice of mathematical equivalencies," based on the witness's other statements about the estimated rate of speed of the motorcycle and her estimate of the distance between the vehicles.  Mr. Schottel is not asking the Court to take judicial notice; he is asking the Court to accept his opinion as whether the accident could have occurred as Ms. Diggs testified.  Mr. Schottel, however, is not an expert on accident reconstruction, and he did not submit the testimony of such an expert.  While it is true that Ms. Diggs is also not an expert, she was an eye witness and her testimony is admissible.  Other than pointing out minor discrepancies in the eyewitness's statements, Plaintiffs have presented no admissible evidence regarding the events leading to the accident and how the accident occurred.

[5]Plaintiffs move to strike from defendants' Statement of Uncontroverted Material Facts any facts that rely on the testimony of Officer Brian Waltman.  Plaintiffs argue that defendants did not identify Officer Waltman in their Rule 26 disclosures.  First, a motion to strike is properly directed only to material contained in pleadings.  Orders, motions, briefs, memoranda, objections or affidavits may not be attacked by a motion to strike.  2 James W. Moore, et al., Moore's Federal Practice § 12.37[2] (3rd ed.2010).  See Coleman v. City of Pagedale, No. 4:06-CV-1376 ERW, 2008 WL 161897, at *4 (E.D. Mo. Jan. 15, 2008); Mecklenburg Farm, Inc. v. Anheuser-Busch, Inc., No. 4:07-CV-1719 CAS, 2008 WL 2518561, *1 (E.D. Mo. June 19, 2008).  Second, plaintiffs identified "Brian Walton" as an individual that they may use to support their claims or defenses, however, it was later learned in discovery that the correct spelling of this officer's name is Waltman not Walton.  Finally, plaintiffs have not identified any prejudice that they have suffered as a result of defendants' use of Waltman's deposition testimony in support of summary judgment.  In fact, plaintiffs' counsel took the deposition of Officer Waltman, and it is testimony from this deposition plaintiffs are attempting to exclude.  The Court will deny plaintiffs' motion to strike.

[6]Plaintiffs object to this testimony as hearsay.  This testimony, however, is not hearsay because it is not being offered for the truth of the matter asserted.  Valadez v. Watkins Motor Lines,

-6-

defendant Waggoner that the traffic sergeant had determined that the accident reconstruction unit would not handle the investigation of the motorcycle collision and that the investigation would be handled at the district level. Plaintiffs put forth no evidence in support of their allegation that defendants Tanksley, Waggoner and Johnson were responsible for the decision not to have the accident reconstruction team perform an investigation of the collision. District officers, such as defendants Tanksley, Waggoner and Johnson, do not have the option of performing accident reconstruction themselves because they are not trained in accident reconstruction. Defendants Waggoner and Tanksley did not have any equipment to do any kind of sophisticated measurements, and no measurements were taken with respect to the collision between Robert Jason Johnson and Mr. Howard.

Defendant Waggoner prepared the written accident report at the patrol station. There is a dispute of fact as to whether defendant Tanksley assisted defendant Waggoner in preparing the accident report, however, this fact is immaterial because it is undisputed that defendant Tanksley provided defendant Waggoner with a statement about what he saw the yellow motorcycle doing on westbound Natural Bridge, and his attempt to stop the yellow motorcycle. The narrative of the accident report provides:

> Witness Lieutenant Donnell Tanksley DSN 4179 stated he was traveling west in the 4500 block of Natural Bridge when he observed approximately fifteen motorcycles traveling west on Natural Bridge just ahead of him. He stated he observed a yellow

Inc., 758 F.3d 975, 981 (8th Cir. 2014) ("[a]s long as the purpose of the question is not to elicit an out-of-court statement for the truth of the matter asserted, then the answer to the question does not call for hearsay, even when the answer includes the content of the out-of-court statement.) (citing Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 172–73 & n. 18 (1988)). See also Bennett v. Nucor Corp., 656 F.3d 802, 812 (8th Cir. 2011) (out of court statements admissible to show notice). Defendants are not trying to prove the state of Robert Jason Johnson's condition, but rather what the police officers knew about his condition.

motorcycle later identified as vehicle #1 weaving in and out of lanes and traveling in the bicycle lane along side the group of motorcycles. Lt. Tanksley attempted to curve vehicle #1 at Natural ridge and Marcus. He stated vehicle #1 turned right onto Marcus going northbound and pulled into the Shell Station parking lot. He stated before he could notify the dispatcher of the vehicle stop vehicle #1 then exited the parking lot and began traveling east on Natural Bridge at a high rate of speed. Lt. Tanksley advised the dispatcher of careless and reckless driving relative to vehicle #1. He stated later while traveling east on Natural Bridge he observe that vehicle #1 had been involved in an accident at Natural Bridge and Paris.

Driver #2, [Mr. Howard], stated he was traveling east on natural Bridge when he approached the intersection of Natural Bridge and Paris. He stated he was in the process of making a right turn onto Paris southbound, when he observed vehicle #1 traveling east on Natural Bridge in the bicycle lane enter the intersection. He stated vehicle #1 clipped his front bumper, deflected off the front bumper and flipped several times. He added driver #1's body struck a utility pole on the side of the street knocking driver #1 off the motorcycle. He stated driver #1 landed in the street.

Driver #2 was not injured and refused medical attention.

Passenger in vehicle #2, [Ms. Diggs], stated they were traveling east on Natural Bridge when they approached the intersection of Natural Bridge and Paris. She stated they were in the process of making a right turn onto Paris southbound, when they observed vehicle #1 traveling east on Natural Bridge in the bicycle lane enter the intersection. She state vehicle #1 clipped their front bumper, deflected off the bumper and flipped several times. She added driver #1's body struck a utility pole on the side of the street knocking driver #1 off the motorcycle. She stated driver #1 landed in the street.

Passenger in vehicle #2 was not injured and refused medical attention.

Juvenile passenger in vehicle #2 was not injured. Driver #2 the parent of the passenger refused medical attention on her behalf.

Driver #1, [Robert Jason Johnson], was unable to make a statement due to his injuries. Driver #1 was transported to Barnes Jewish Hospital by EMS Medic 12 per trip #31084. Driver #1 was admitted to the hospital. Dr. Doug Schuerer of the medical staff examined driver #1. He was diagnosed in critical-unstable condition.

Officer Brian Walton, DSN 3992 in car 7980 of the Accident Reconstruction Unit responded to Barnes and stated that the accident would be handled at district level.[7]

An inspection of the utility pole which the body of driver #1 struck did not sustain any damage.

Sergeant Kelly Middleton DSN, 4536 took photographs of the scene. The film was transported to the lab.

Doc. 118, Ex. B at 4-5.

In the accident report, it was noted that Robert Jason Johnson's speed and improper lane usage were probable contributing circumstances to the collection. In the accident report, Robert Jason Johnson was charged with two traffic charges for "Improper Lane Usage" and "Reckless Driving By Other." Id. at 7.

The accident report was submitted by defendant Waggoner and reviewed by his supervisor, defendant Johnson. Defendant Johnson spoke to defendant Waggoner about the facts surrounding the accident prior to reviewing the accident report. Defendant Johnson also spoke with defendant Tanksley about the accident before the report was completed. Johnson testified that his concern with regard to this accident was whether the person was killed, and whether they notified the accident reconstruction unit. He testified that he was not focused on who the people were or what they looked like.

Based upon his investigation of the accident, defendant Waggoner testified he believed that there was no negligence on behalf of Mr. Howard. He testified that his determination was based on the statements of Mr. Howard, Ms. Diggs and defendant Tanksley, as well as the positioning of the vehicles, and where the motorcycle landed. Defendant Waggoner testified that defendant Tanksley

_____

[7]Defendant Waggoner wrote the wrong name of the officer with DSN 3992 in car 7980. The correct name is Officer Brian Waltman.

did not direct him to assign fault to Robert Jason Johnson. Mr. Howard and Ms. Diggs have both testified that the statements that are attributed to them in the accident report are accurate.

Defendant Tanksley, defendant Johnson, Howard and Diggs are African American. Defendant Waggoner and Robert Jason Johnson are Caucasian. Defendants Tanksley and Johnson have played racquetball and PlayStation together.

Robert Jason Johnson, the driver of the yellow motorcycle involved in the collision, died on June 1, 2008, as a result of the injuries he sustained. At the time of his death, he had $25,000.00 coverage in life insurance and $25,000.00 in accidental death and dismemberment coverage. The $25,000.00 accidental death and dismemberment coverage was not paid to the Estate or any beneficiaries. In making the decision to deny the $25,000.00 accidental death and dismemberment coverage, the insurance company relied primarily on the accident report prepared by defendant Waggoner.

In 2009, Plaintiffs filed suit against Mr. Howard in Circuit Court for the City of St. Louis for wrongful death. <u>Amber Johnson, et al. vs. Bryant Howard</u>; Cause No. 0922-CC09377 (the "Wrongful Death Case"). Doc. 1 at 8. The case was tried to a jury. Mr. Howard, Ms. Diggs, and defendant Tanksley provided live testimony at trial. Portions of the transcript of defendant Waggoner's deposition were read to the jury. Following closing arguments, the jury returned a defense verdict in favor of Mr. Howard.

## IV. Discussion

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law. <u>See</u> <u>West v. Atkins</u>,

487 U.S. 42, 48 (1988); Neighborhood Enters., Inc. v. City of St. Louis, 540 F.3d 882, 885 (8th Cir. 2008) (quoting West). "Section 1983 does not confer substantive rights but merely provides a means to vindicate rights conferred by the Constitution or laws of the United States." Wilson v. Spain, 209 F.3d 713, 715 (8th Cir. 2000). Plaintiffs bring three § 1983 claims for violations of their substantive due process rights, equal protection rights, and conspiracy to violate their civil rights.

### A.      Substantive Due Process

In Count I of their complaints,[8] Plaintiffs allege defendants Tanksley, Waggoner, and Johnson violated their substantive due process rights by creating a false accident report, failing to fairly and properly investigate the collision, and conducting a reckless investigation. "[T]he theory of substantive due process is properly reserved for truly egregious and extraordinary cases." Myers v. Scott Cnty., 868 F.2d 1017, 1018 (8th Cir. 1989). To recover for a deprivation of substantive due process, a "plaintiff 'must demonstrate both that the official's conduct was conscience-shocking, and that the official violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.' " Slusarchuk v. Hoff, 346 F.3d 1178, 1181–82 (8th Cir. 2003) (emphasis in original) (quoting Moran v. Clarke, 296 F.3d 638, 651 (8th Cir.2002) (en banc)). The Supreme Court "has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992). "'Substantive due process' analysis must begin with a careful description of the asserted right," and courts must

---

[8]Intervenor plaintiff Deborah Lee Johnson filed a complaint that tracks the same language and asserts the same counts as the complaint the original plaintiffs filed against defendants Tanksley, Waggoner, and Johnson. Therefore, the Court's analysis applies to both complaints in this case.

exercise restraint in expanding the scope of such rights. Reno v. Flores, 507 U.S. 292, 302 (1993); see also Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001) (substantive-due-process analysis must begin with an examination of the interest allegedly violated). Plaintiffs here have failed to establish a due process violation, because they have not shown that they were deprived of a constitutionally protected interest and that defendants' conduct was "conscience-shocking." Slusarchuk, 346 F.3d at 1181.

### 1. No evidence accident report was falsified

Plaintiffs maintain that defendants falsified the accident report. There is no evidence in the record that the accident report is materially false. Both Mr. Howard and Ms. Diggs testified that the statements attributed to them in the accident report are correct. And the statements in the accident report that are attributed to defendant Tanksley are consistent with what he testified he observed prior to the accident. In attempting to prove that the accident report is false, Plaintiffs have pointed to a number of small discrepancies in the testimony of defendant Tanksley, Mr. Howard, and Ms. Diggs, for example: the color of the unmarked police car, whether defendant Tanksley turned on his lights in addition to his siren or just his siren, the direction in which defendant Tanksley and the yellow motorcycle entered the gas station lot, whether defendant Tanksley picked up his radio before or after the yellow motorcycle sped away, and the description of the clothes Robert Jason Johnson was supposedly wearing. It is expected that eyewitness accounts may vary as to some of the details. But more importantly, none of these details are material, and Plaintiffs offer no admissible evidence explaining how the collision occurred and why Robert Jason Johnson was not reckless or at fault. Even if the Court were to accept Plaintiffs' premise that either the incident at the Shell Station did not occur, or that defendant Tanksley was mistaken as to whether the yellow motorcycle he

attempted to stop was Robert Jason Johnson, there is undisputed evidence that Robert Jason Johnson was driving his motorcycle at an unsafe speed in the bicycle lane moments before the collision.

### 2.     No constitutional right to accurate accident report

Defendants also argue in their motion for summary judgment that even if Plaintiffs are correct that the accident report at issue is false, defendants are entitled to judgment as a matter of law because "here is no constitutional right to an accurate police report. Plaintiffs respond that a falsified police report does constitute a due process violation when the alleged falsified report leads to an unconstitutional deprivation of life, liberty, or property. Without citing to supporting authority, Plaintiffs maintain that the falsified accident report led to the deprivation of their property in the wrongful death action and in the denial of life insurance benefits.

A number of courts, including the Eighth Circuit Court of Appeals, have held that there is no constitutional right to an accurate police report. See Jarrett v. Township of Bensalem, 312 Fed. Appx. 505, 507 (3d. Cir. 2009), Landrigan v. Warwick, 628 F.2d 736, 744 (1st Cir. 1980); Shock v. Tester, 405 F.2d 852, 855 (8th Cir. 1969); (no property interest where plaintiff alleged patrolman knowingly and intentionally prepared, filed, and failed to correct a false accident report); Lawrence v. City of St. Paul, 740 F. Supp.2d 1026, 1038-39 (D. Minn. 2010) ("even if police defendants knowingly inserted false information in their reports, [plaintiff] was not deprived of a constitutional protected interest because of that false information, and thus she was not deprived of substantive due process."), Haggins v. City of St. Paul, No. 09-537 DWF/RLE, 2010 WL 1380134, at * 12 (D. Minn. Mar. 1, 2010) ("plaintiff has no constitutional right to an accurate police report"), Graham v. City of Albany, No. 1:08-CV-892 RFT, 2009 WL 4263510, at *9 (N.D.N.Y. Nov. 23, 2009), Harmon v. St. Louis County, 4:08-CV-226 SNLJ, 2009 WL 880024, at * 3 (E.D. Mo. Mar. 30, 2009) ("[t]here

is no constitutional right to an accurate police report."), <u>Jarrett v. Township v. Bensalem</u>, No. 07-1480, 2008 WL 818615, at *3 (E.D. Pa. Mar. 26, 2008) ("[t]he filing of a false police report is not itself a constitutional violation, even when the report is the result of an intentional conspiracy among police officers to cover up police misconduct."), <u>Culbreath v. Morgan</u>, 3:05-CV-280 GTE, 2006 WL 2331111, at *3 (E.D. Ark. Aug. 9, 2006); <u>Bush v. City of Philadelphia</u>, No. 98-0994, 1999 WL 554585, at *4 (E.D. Pa. 1999). <u>White v. Tamlyn</u>, 961 F.Supp. 1047, 1056–57 (E.D. Mich. 1997); <u>Bailey v. Tricolla</u>, No. CV-94-4597 CPS, 1995 WL 548714, at *5 (E.D.N.Y. Sept. 12, 1995) ("the mere filing of false police reports, by themselves and without more, [does] not create a right of action in damages under 42 U.S.C. §1983").  An action only lies "when the alleged falsified report leads to an unconstitutional deprivation of life, liberty, or property." <u>Landigram</u>, at 745.

Plaintiffs acknowledge this case law, but they argue the false accident report did lead to the deprivation of their constitutionally protected interests, namely their right to collect accidental death insurance proceeds.  They also claim they were denied meaningful access to the courts in the wrongful death case and property from the wrongful death case as a result of the falsified accident report.

### 3. Expectancy in insurance proceeds is not a protected property right

Plaintiffs cite to no authority establishing that expected insurance proceeds are a protected property interest under the Constitution, and that Court has found none.  According to the Third Circuit "one does not have a constitutional right to full recovery on an insurance claim. Nor is there a constitutional right even to a full insurance settlement." <u>Jarrett</u>, 312 Fed. Appx. at 508.  <u>See</u> <u>also</u> <u>Hill v. Racine</u>, Civ. A. No. 04-831, 2005 WL 1657093, at *2 (E.D. Wis. July 13, 2005) (there is no constitutionally protected "liberty or property interest in obtaining a large insurance settlement.")

To have a constitutionally protected property interest, a person clearly must have "more than an abstract need or desire for it." Board of Regents v. Roth, 408 U.S. 564, 576 (1972). He or she "must have more than a unilateral expectation of it." Id. The plaintiff "must, instead, have a legitimate claim of entitlement to it." Id. As the Third Circuit noted, insurance proceeds "are subject to the policies and procedures of private insurance companies and to the specific facts relating to a particular loss. They are not entitlements, as that term is understood in context of the Fourteenth Amendment." Jarrett, 312 Fed. Appx. at 508. Here, Plaintiffs have not shown that they would have been entitled to the accidental death insurance proceeds, but for the allegedly false accident report.

Even if the Court were to accept Plaintiffs' premise that defendant Tanksley's version of the facts did not happen or he was mistaken as to the identity of the motorcycle driver, there is no evidence that the accident report is inaccurate as to how that collision occurred – that Robert Jason Johnson drove at an unsafe speed in the bicycle lane, while Mr. Howard was attempting to make a right hand turn. The insurance adjuster testified that she based her decision to deny accidental death benefits on the whole accident report, not just defendant Tanksley's version of the events preceding the collision. There is no way to know whether Plaintiffs' claim for accidental death benefits would have been paid but for the inclusion of defendant Tanksley's statements. Plaintiffs expected to receive the proceeds, but they were not entitled to them. The Court is unwilling to extend constitutional protection to an expected insurance interest because Plaintiffs' insurance claim was subject to the terms of the insurance policy and a determination by the insurance company following its own investigation. Jarrett, 312 Fed. Appx. at 508. Plaintiffs' substantive due process claim based on an alleged loss of accidental death benefits is without merit.

####        4.        No property right to wrongful death civil action

Plaintiffs also claim that they were unconstitutionally denied their property rights from the wrongful death case as a result of the supposedly false accident report.  Possible recovery of money damages in a civil suit is not a property interest protected by the Fourteenth Amendment.  Graham v. City of Albany, No. 1:08-CV-892 RFT, 2009 WL 4263510, at *9 (N.D. N.Y. Nov. 23, 2009) (dismissing the plaintiff's claim that she had a property interest in her ability to recover money damages in a civil action).  Again, the Fourteenth Amendment does not protect interests that are "based solely on abstract hopes and expectations."  Id. (citing Roth, 408 U.S. at 577).  See also Harmon v. St. Louis County, 4:08-CV-226 SNLJ, 2009 WL 880024, at * 3 (E.D. Mo. Mar. 30, 2009) (finding no constitutionally protected property interest in personal injury claim).  Plaintiffs' theory that they would have recovered money damages in the wrongful death suit is just speculation.  It is not a property interest, and Plaintiffs have provided no authority in support of their assertion.  Harmon, 2009 WL 880024, at *4.

Furthermore, Plaintiffs have done nothing to show that they would have recovered in the wrongful death suit, but for the supposedly false accident report.  Mr. Howard and Ms. Diggs testified at trial in the wrongful death suit, and they were subject to cross examination by Plaintiffs.  Defendant Tanksley also testified and was subject to cross examination.[9] Plaintiffs have done nothing to show that the result of the wrongful death trial hinged on the accident report.

---

[9]In their complaint, Plaintiffs attempted to bring claims against defendants for providing false testimony at trial.  The Court granted defendants' partial motions to dismiss and ruled that Plaintiffs cannot state a claim under  § 1983 based on allegations that a defendant gave false testimony because witnesses are entitled to absolute immunity.  See Snelling v. Westhoff, 972 F.2d 199, 200 (8th Cir. 1992) (holding district court properly dismissed claim against governmental agent based on absolute witness immunity) (citing Briscoe v. LaHue, 460 U.S. 325, 329-46 (1983); House v. Belford, 956 F.2d 711, 720-21 (7th Cir. 1992)).

### 5.        No denial of access to the courts

Plaintiffs' assertion that they were denied meaningful access to the court as a result of the falsified accident report is also without merit. There is a constitutional right to access to the courts. Christopher v. Harbury, 536 U.S. 403, 415 (2002). The right applies not only to the actual denial of access to the courts, but also to situations in which the plaintiff has been denied meaningful access by some impediment put up by the defendant. Scheeler v. City of St. Cloud, 402 F.3d 826, 830 (8th Cir. 2005), Alexander v. Macoubrie, 982 F.2d 307, 308 (8th Cir. 1992). To establish a claim that a government official violated the plaintiffs' constitutional right to access the courts, plaintiffs must show that the defendants acted with some intentional motivation to restrict their access to the courts. Scheeler, 402 F.3d at 830–31. See also Whisman v. Rinehart, 119 F.3d 1303, 1313 (8th Cir. 1997) (right to access the court claim requires proof of government action "designed" to prevent access to the courts); Harrison v. Springdale Water & Sewer Com'n, 780 F.2d 1422, 1428 (8th Cir. 1986) (finding plaintiffs sufficiently pled a right to access the courts claim by alleging that city employees retaliated against them for filing a lawsuit). In the case at bar, the Court finds nothings to indicate that "defendants intentionally conspired to keep the [plaintiffs] out of court." Scheeler, 402 F.3d at 830–31. There is no evidence in this case that the defendants acted with some intentional motivation to restrict Plaintiffs' access to the courts. Scheeler, 402 F.3d at 830–31.

Even if the Court were to assume that the accident report was false and it was falsified to prevent Plaintiffs from filing a civil lawsuit, Plaintiffs have presented no evidence that they were denied access to the courts. The existence of this alleged falsified accident report "has not thwarted [their] pursuit of a lawsuit . . . ." Harmon, 2009 WL 880024, at *4 (dismissing motorcycle driver's claim that police officer falsified accident report to deprive him of personal injury claim). See also

-17-

Graham, 2009 WL 4263510, at *8 ("[p]laintiff has failed to explain how defendants' actions impeded her efforts to pursue a non-frivolous legal claim. [Defendant]'s alleged falsification of the report through his failure to interview witnesses, exclusion of plaintiff's own statements and failure to accurately document the damage to plaintiff's car, would not and has not hindered plaintiff's ability to bring a civil claim in state court."). Here, Plaintiffs did file a wrongful death suit against Mr. Howard in state court. Hasseneh v. City of Minneapolis, 560 F. Supp.2d 764, 769 (D. Minn. 2008) (finding no merit to plaintiffs' right to access the courts claim because plaintiff did bring claim against third party, despite "falsified" police report.) In fact, Plaintiffs' wrongful death claim was presented to a jury, and Plaintiffs had an opportunity to cross examine defendant Tanksley, Mr. Howard, and Ms. Diggs on the stand.

Plaintiffs also have not demonstrated how they have been damaged. See Beaulieu v. Ludeman, No. 07-CV-1535 JMR/JSM, 2008 WL 2498241, *7 (D. Minn.2008) (in order to survive a motion to dismiss, a plaintiff must allege in a access-to-courts claim that the defendants' actions resulted in actual harm or actual injury). Plaintiffs are dissatisfied with the result of their wrongful death suit, but as stated above, they have not established how the results might have been different but for the supposedly false accident report.

### 6. No right to accident reconstruction

Plaintiffs claim that defendants were reckless in their investigation of the accident and they failed to preform an accident reconstruction. In order to establish a violation of due process based upon a failure to investigate, the plaintiff must demonstrate that the police "intentionally or reckless failed to investigate, thereby shocking the conscience." Akins v. Epperly, 588 F.3d 1178, 1184 (8th Cir. 2009). Plaintiffs have not met their burden here.

First and foremost, Plaintiffs are not entitled to an accident reconstruction. See Arizona v. Youngblood, 488 U.S. 51, 58-59 (1988) ("[t]he police do not have a constitutional duty to perform any particular tests."), Scheeler, 402 F.3d at 832(officer's failure to perform an autopsy, test blood splatters, and immediately treat the scene as a crime scene is not sufficient to establish deliberate indifference).

Plaintiffs argue that the defendants have not presented a reason why accident reconstruction was not performed. Although they are not entitled to accident reconstruction, it is undisputed that Officer Waltman told defendant Waggoner that the traffic sergeant had determined that accident reconstruction would not occur and that the investigation would be handled by the district. Plaintiffs have presented no evidence in support of their notion that the defendants made the decision not to conduct an accident reconstruction. In fact, it is undisputed that defendants Tanksley, Waggoner and Johnson did not make the decision that the accident reconstruction would not be performed, and they did not have the option of performing accident reconstruction themselves because there were not trained to undertake such an investigation. Furthermore, Plaintiffs have not show how they might have been damaged by the failure to perform an accident reconstruction. Again, Plaintiffs have put forth no evidence that the collision occurred any other way than what was described by Mr. Howard and Ms. Diggs.

### 7. No claim for failure to investigate

Plaintiffs also claim defendants failed to and were reckless in their investigation of the collision. Plaintiffs have not shown that the police in the case "intentionally or reckless failed to investigate, thereby shocking the conscience." Akins, 588 F.3d at 1184. Plaintiffs may be unhappy with the thoroughness of the investigation, but there is no evidence that defendants "intentionally

or recklessly <u>failed to investigate</u>," such that there was a constitutional violation. <u>Id.</u> (emphasis added). There is undisputed evidence that defendant conducted a constitutionally adequate investigation.

It is undisputed that the police in this case obtained statements from Mr. Howard and Ms. Diggs, which were including in the accident report. Plaintiffs, however, attempt to cast doubt on the integrity of the investigation by pointing to the fact that Mr. Howard and Ms. Diggs testified that they gave their statements at the scene to an African-American police officer, and defendant Waggoner, who claims he took Mr. Howard's and Ms. Diggs's statements, is Caucasian. This discrepancy is immaterial because both Mr. Howard and Ms. Diggs have testified that their statements in the accident report are accurate. Plaintiffs also point to the fact that fault was assigned to Robert Jason Johnson based on the position of the vehicles, however, Mr. Howard's car was moved prior to defendant Waggoner appearing on the scene. Again, this fact is immaterial. Plaintiffs do not maintain that the car was moved prior to any officer arriving on the scene, and even if it were, the officers obtained statements from Mr. Howard and Ms. Diggs about the positions of the vehicles. Plaintiffs further find fault in the fact that defendant Waggoner did not take measurements and for inaccurate drawings in the accident report. Plaintiffs have not pointed to any material inaccuracies in the drawings, and have provided no authority for the claim that measurements are a constitutional requirement.[10] Furthermore, Plaintiffs have not established how

---

[10]Plaintiffs allude to the fact that Mr. Howard could have been found to have recklessly caused the death of Robert Jason Johnson, and he could have been charged with involuntary manslaughter under Missouri Revised Statutes § 656.024. Plaintiffs have pointed to no evidence to suggest Mr. Howard was reckless, and in any event, Plaintiffs have no constitutional interest in criminal charges being filed against another individual. "[S]eminal constitutional principles tell us that a plaintiff does not have a constitutional right to bring or to compel a criminal prosecution against one who [he or]she alleges caused [his or] her injury and damages." <u>Graham</u>, 2009 WL 4263510 at *7

they were damaged by the failure to take measurements or the supposedly inaccurate drawings in the accident report. The Court would also point out that the police took photographs at the scene of the collision, which were used by Plaintiffs in opposing the present motion, and during the wrong death suit.

In sum, Plaintiffs have failed to establish a substantive due process claim. They have not shown that they were deprived of a constitutionally protected interest and that defendants' conduct rose to the level of a constitutional violation, such that it was "conscious-shocking." Slusarchuk, 346 F.3d at 1181.

### B. Equal Protection

Plaintiffs allege in Count II of their complaints that defendants violated the Equal Protection Clause of the Constitution in that they did not conduct a fair investigation of the collision and blamed the collision on Robert Jason Johnson because of his race. In order to survive summary judgment on an Equal Protection claim based on race, the plaintiffs must show that the officers were motivated by a discriminatory purpose and offer some evidence the officers' conduct had a discriminatory effect. Johnson v. Crooks, 326 F.3d 995, 999-1000 (8th Cir. 2003), United States v. Bell, 86 F.3d 820, 823 (8th Cir. 1996).

Plaintiffs attempt to establish a prima face case for an Equal Protection violation by pointing out that defendants Tanksley and Johnson, Mr. Howard and Ms. Diggs are African American, and Robert Jason Johnson was Caucasian. This is hardly evidence of race discrimination. Plaintiffs must offer some affirmative evidence that the defendants' investigation was motivated by race,

---

(dismissing plaintiffs claims that police officers violated her constitutional rights by conspiring to cover up a hit and run accident).

which requires proof of both discriminatory effect and discriminatory purpose. Johnson, 326 F.3d at 1000. For example, a claim could be supported by evidence that similarly situated individuals were treated differently than the plaintiffs or by direct evidence of racial discrimination. Id.

Plaintiffs argue that there is direct evidence of racial discrimination because there is evidence that defendant Tanksley, who is African American, ordered defendant Waggoner, who is Caucasian, to write the accident report and assign fault to Robert Jason Johnson. First, the Court disagrees that there is evidence to support Plaintiffs' theory, as defendant Waggoner testified that he came to his own conclusion about the cause of the collision based on the statements of defendant Tanksley, Mr. Howard, and Ms. Diggs, and the positions of the vehicles. But even if defendant Tanksley had ordered defendant Waggoner to write the accident report and assign blame to Robert Jason Johnson, this fact would not establish that the officers were motivated by race. In their response memorandum, Plaintiffs argue that a "young" defendant Waggoner was "pressed into participating in [a] constitutional violation, by his African-American superiors." Doc. 169 at 16. Plaintiffs' theory is not evidence but unfounded speculation, and it does not create a genuine issue of material fact. O'Brien v. Department of Agriculture, 532 F.3d 805, 811 n.3 (8th Cir. 2008), Anda v. Wickes Furniture Co., 517 F.3d 526, 531 (8th Cir. 2008). Plaintiffs have presented no evidence to support their theory of the events and can only point to the race of the respective individuals, which is not enough to survive summary judgment. Under Plaintiffs' theory, officers of one race could not police citizens of another race because all of their decisions would necessarily be subject to scrutiny for potential Equal Protection violations.

In support of their theory of a Equal Protection violation, Plaintiffs also point to the fact that Mr. Howard and Ms. Diggs testified they gave their statements to an African-American police

officer, and yet defendant Tanksley, the African-American officer, denied taking their statements, while defendant Waggoner, the white officer, asserts that he was the one who took the statements. There are a number of explanations for the discrepancy, including lapsed memories and the fact that a number of officers were on the scene of the accident. In any event, the discrepancy does not preclude the entry of summary judgment because Plaintiffs do nothing to "explain[ ] how, under the applicable law, the disputed facts might prove [their] claim at trial." Quinn v. St. Louis County, 653 F.3d 745, 751-52 (8th Cir. 2011). Moreover, Plaintiffs' theory that this is evidence of a racial cover-up is only speculation. See O'Brien, 532 F.3d at 811 n.3 (mere speculation that "does not create a genuine issue of material fact."). A discrepancy as to who gave a statement to whom does not amount to evidence that defendants acted based on an intent to discriminate based on race. See Fatemi v. White, 775 F.3d 1022, 1047 (8th Cir. 2015) (rejecting plaintiff's proposed interpretation of a memorandum, finding it was not based on fact but mere speculation). There is nothing in the record to indicate that defendants' investigation of the collision and assignment of fault was made in bad faith or that there was a conspiracy to discriminate based on race. Id.

Plaintiffs also argue they have established an Equal Protection violation because defendant Johnson, who is African American, approved and signed off on the accident report after speaking with defendant Tanksley. And they point to the fact that defendants Tanksley and Johnson have "hung out socially playing racquetball and PlayStation at defendant Johnson's house." Doc. 169 at 15. Without explicitly so stating, Plaintiffs are insinuating that evidence of colleagues of the same race socializing together is evidence that they are conspiring to discriminate based on race. The notion is misguided and insulting, and, more importantly, not based on any legal authority.

In sum, Plaintiffs have produced not a scintilla of evidence that defendants violated the Equal Protection Clause of the Constitution by failing to conduct a fair investigation of the collision and blaming the collision on Robert Jason Johnson because of his race. The Court finds Plaintiffs' Equal Protection claim borders on frivolous, and defendants are entitled to summary judgment on it.

### C.    Conspiracy

In Count III of their complaints, Plaintiffs allege defendants conspired and acted in concert in preparing the false accident report, giving false testimony, and failing to properly investigate the collision in order to deprive Plaintiffs property and meaningful access to the courts. Plaintiffs cannot prove a conspiracy claim against defendants because their underlying constitutional claims in Count I and II fail. A claim for civil conspiracy "does not set forth an independent cause of action but rather is sustainable only after an underlying tort has been established." Hanten v. School Dist. of Riverview Gardens, 183 F.3d 799, 809 (8th Cir. 1999) (citing to K & S Partnership v. Continental Bank, N.A., 952 F.2d 971, 980 (8th Cir. 1991)). Therefore, in the absence of an underlying constitutional violation, there cannot be an actionable conspiracy claim. Cook v. Tadros, 312 F.3d 386, 388 (8th Cir. 2002). Plaintiffs' conspiracy claim is entirely without merit.

### V. Conclusion

For the foregoing reasons, the Court finds there are no genuine issues of material fact that remain in this matter, and concludes that defendants Tanksley, Waggoner, and Johnson have established they are entitled to summary judgment as a matter of law on Plaintiffs' claims against them under 42 U.S.C. § 1983 for substantive due process, equal protection, and conspiracy. As a result, the Court does not reach defendants' argument that they are entitled to summary judgment based on qualified immunity.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Perri A. Johnson, Donnell W. Tanksley, and Matthew J. Waggoner's motion for summary judgment is **GRANTED.** [Doc. 117]

**IT IS FURTHER ORDERED** that plaintiffs A.J., B.M., D.M., and The Estate of Robert Jason Johnson's Motion to Strike Paragraphs 29 through 38 of Defendants' Statement of Uncontroverted Material Facts is **DENIED.** [Doc. 133]

**IT IS FURTHER ORDERED** that plaintiffs A.J., B.M., D.M., and The Estate of Robert Jason Johnson's Motion for Leave to file Exhibits 22 and 31 to Plaintiffs' Statement of Material Facts in Which a Genuine Issue Exists and Plaintiffs' Additional Undisputed Material Facts under seal is **GRANTED.** [Doc. 148]

An appropriate judgment will accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this __3rd__ day of March, 2015.